1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

OPAL HARGER, *et al.*

     Plaintiffs,

     v.

U.S. DEPARTMENT OF LABOR, and THE NATIONAL INSTITUTE OF OCCUPATIONAL SAFETY AND HEALTH,

     Defendants.

NO.  CV-06-5071-RHW

**ORDER GRANTING MOTIONS FOR JOINDER, DENYING IN PART, GRANTING IN PART DEFENDANTS' MOTION TO DISMISS**

Before the Court are Defendants' Motion to Dismiss (Ct. Rec. 21) and Plaintiffs' Motions for Joinder (Ct. Recs. 39 & 44).  A hearing was held on April 24, 2007.  Tom Foulds appeared on behalf of Plaintiffs; Assistant United States Attorney Rolf Tangvald appeared on behalf of Defendants.  The Court orally ruled on these motions, and this Order memorializes the Court's oral rulings.

**A.    Plaintiffs' Motions for Joinder**

Plaintiffs ask this Court to join Thelma Bischoff, as surviving spouse and personal representative of Warren Bischoff (Ct. Rec. 39), and Marvin B. Schack, as surviving son and personal representative of former Hanford worker Marvin H. Schack (Ct. Rec. 44), to their claims.  Ms. Bischoff's and Mr. Schack's claims present the same legal and factual questions that were prevalent in Plaintiffs' previously-granted motions for joinder.  (Ct. Recs. 34 & 43).  Therefore, Plaintiff's Motions for Joinder are granted.

**ORDER GRANTING MOTIONS FOR JOINDER, DENYING IN PART, GRANTING IN PART DEFENDANTS' MOTION TO DISMISS \* 1**

1  **B.    Defendants' Motion to Dismiss**

2     The Government moves to dismiss Plaintiff Opal Harger's complaint based

3  on lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a

4  claim upon which relief can be granted pursuant to Rule 12(b)(6).

5     **1.    Statutory Background of EEOICPA**

6     In 2000, Congress passed the Energy Employees Occupational Illness

7  Compensation Program Act of 2000 (EEOICPA or "Act"), 42 U.S.C. § 7384, *et*

8  *seq*.  The EEOICPA establishes a compensation program providing benefits to

9  individuals with illnesses caused by exposure to radiation and other toxic

10  substances in the course of their work related to the nuclear weapon production

11  and testing programs of the U.S. Department of Energy (DOE) or its predecessor

12  agencies.  42 U.S.C. § 7384.  Section 7384s provides that "a covered employee, or

13  survivor of that covered employee if the employee is deceased, shall receive

14  compensation for the disability or death of that employee from that employee's

15  occupational illness in the amount of $150,000." 42 U.S.C. § 7384s(a)(1).

16     An individual is entitled to benefits under the EEOICPA if the claim is for

17  radiogenic cancer that is "at least as likely as not related to the employment at the

18  DOE facility." 20 C.F.R. § 30.210.[1]  To determine if the claimant's radiogenic

19  cancer is at least as likely as not related to his or her employment at a DOE

20  facility, the DOL will forward the claimant's information to NIOSH [2] for a dose

21  reconstruction.  A dose reconstruction occurs when the DOL cannot determine the

22  amount of radiation the employee absorbed while employed.  *See* 42 U.S.C. §

23

24     [1]  20 C.F.R. § 30.210 provides numerous other facts that must be established

25  by the plaintiff to receive $150,000. However, none of these other facts appear to

26  be in dispute.

27     [2]  In this case, NIOSH has subcontracted this duty to Oak Ridge Associated

28  Universities Team (ORAUT).

**ORDER GRANTING MOTIONS FOR JOINDER, DENYING IN PART,
GRANTING IN PART DEFENDANTS' MOTION TO DISMISS * 2**

7384n(d).  The basic principal of dose reconstruction is to characterize the radiation exposure of the affected employee, and then translate that exposure into quantified doses to specific body organs or tissues.  42 C.F.R. § 82.2.  In reconstructing radiation exposure, the NIOSH utilizes: (1) personal information such as age, gender, and biological information from testing; (2) employment data; (3) co-worker data from workplace monitoring; (4) workplace characterization data; (5) individual monitoring data; and (6) descriptions of the type of work performed at the work location.  42 C.F.R. § 82.14.

NIOSH also relies on the Technical Basis Documents[3] to formulate a dose reconstruction.  (Ct. Rec. 3).  These Technical Basis Documents provide a comprehensive analysis of the exposure conditions that employees may have encountered at Hanford along with various tables and conversion factors to be utilized in calculating doses.  The Technical Basis Documents can be divided into at least three categories: (1) Occupational External Dosimetry; (2) Occupational Environment Dose; and (3) Occupational Internal Dose.  The Occupational External Dosimetry at least partly relates to the neutron exposure to employees working at nuclear facilities.  The Occupational Environment Dose is at least partly concerned with the exposure of employees to radionuclides (*e.g.*, plutonium, strontium-90).  The Occupation Internal Dose at least partly relates to an employee's internal exposure based on urinalysis.

Upon reconstruction of the employee's radiation dose, NIOSH will forward a final dose reconstruction report to the DOL. The DOL will then enter the dose reconstruction into NIOSH-IREP, a special computer program designed to calculate the Probability of Causation that the cancer was caused by the employee's employment.  If the Probability of Causation is greater than 50

---

[3]  In her complaint, Harger asserts that the authors of the Technical Basis Documents have a conflict of interest. (Ct. Rec. 3).

**ORDER GRANTING MOTIONS FOR JOINDER, DENYING IN PART, GRANTING IN PART DEFENDANTS' MOTION TO DISMISS * 3**

percent, then the claimant will receive the $150,000 compensation. *See* 42 §
7384n(b). If the Probability of Causation is less than 50 percent, then the claimant
will not receive the $150,000 compensation. *See id.*

### 2. **Facts Regarding Opal Harger**

Plaintiff Opal Harger worked continuously for 33 years as a laboratory
technician testing radioactive samples and materials at Hanford from February
1948 through August 1981. Late in her life, Harger was diagnosed with
infiltrating ductal carcinoma, a form of breast cancer. On September 26, 2001, at
the age of 80, Harger filed a complaint with the DOL seeking compensation under
the EEOICPA. The complaint included dates of employment along with medical
and pathological reports confirming the diagnosis of a covered cancer. After an
eight-month delay, the DOL forwarded Harger's employment information to
NIOSH for a dose reconstruction.

On May 9, 2003, one year after the DOL forwarded the claim to NIOSH,
NIOSH conducted a telephone interview with Harger. On April 15, 2005, about
three years after the DOL forwarded Harger's employment history to NIOSH,
NIOSH completed the dose reconstruction and sent it to the DOL. NIOSH
estimated the dose reconstruction at 40.723 rem. The DOL determined that
Harger's Probability of Causation was 42.36 percent. Therefore, on May 19,
2005, the DOL denied Harger's claim.

Harger timely filed numerous objections with the DOL's Final Adjudication
Branch (FAB) and requested an oral hearing. An oral hearing regarding Harger's
objections was conducted on October 13, 2005. On April 18, 2006, the DOL
issued a denial of Harger's objections, calling this its final decision. Harger filed a
request for reconsideration which was subsequently denied on August 7, 2006.
Harger then filed a complaint with this Court alleging numerous due process and
EEOICPA violations. Harger alleges that: (1) due process was denied because
there are no DOL procedures available to challenge the dose reconstruction

**ORDER GRANTING MOTIONS FOR JOINDER, DENYING IN PART,
GRANTING IN PART DEFENDANTS' MOTION TO DISMISS * 4**

methodology; (2) the DOL failed to provide dose experts to assist Harger; and (3) the DOL refused to disclose to Harger the NIOSH comments and rebuttal to Harger's evidence—in other words, they held an *ex parte* hearing in violation of the APA.

Further, Harger alleges that her dose reconstruction is faulty. Specifically, Harger alleges that the Technical Basis Documents are incorrect because: (1) the Documents failed to take into consideration site specific data such as (a) massive particle releases of radionuclides and (b) ingestion hazards; (2) the radionuclide exposure estimates were based on unreliable stack monitoring measurements; (3) the neutron exposure estimates are unreliable due to (a) corrupt data[4] and (b) poor measuring techniques; and (4) the internal exposures estimates by urinalyses are based on incorrect solubility factors. (Ct. Rec. 3).[5]  Therefore, Harger concludes that her dose reconstruction—which is largely based on the Technical Basis Documents—is incorrect.

On November 9, 2006, after filing the present suit in this Court, the DOL's Office of Workers' Compensation Programs' Director for the Division of Energy Employees Occupational Illness Compensation vacated the final order denying Ms. Harger's claim. The Director found the August 7, 2006, decision did not adequately address the objections raised by Ms. Harger in her request for reconsideration. This order vacated both the August 7 and the April 18, 2006, decisions and remanded the matter to the Office of Workers' Compensation Programs for further development. That Office referred Ms. Harger's claim back

---

[4]  The company that performed these measurements was fired for fraud.

[5]  It appears Ms. Harger is alleging that the scientific methodology selected by the DOL is arbitrary and capacious. *See Earth Island Institute v. U.S. Forest Service*, 442 F.3d 1147, 1160 (9th Cir. 2006) (agency's scientific methodology reviewed by the trial court under an arbitrary and capricious standard).

**ORDER GRANTING MOTIONS FOR JOINDER, DENYING IN PART, GRANTING IN PART DEFENDANTS' MOTION TO DISMISS * 5**

1  to NIOSH for consideration of the issues she raised and for a new dose

2  reconstruction.[6]  The Director's Order is the primary basis for Defendants' current

3  motion for dismissal.  At the hearing, the parties also informed the Court that

4  several of the other Plaintiffs' final orders will also be vacated for reconsideration.

5  However, the Government assured Plaintiffs' counsel and the Court that Plaintiff

6  Therasa Alston's case will not be reopened by the Director.[7]

7      **3.    Discussion**

8      Ms. Harger raises several claims in her Complaint, and she names both the

9  DOL and NIOSH as Defendants.  Aside from her claims related to due process

10  concerns (challenging the NIOSH's methodology in performing the dose

11  reconstruction, adjudicating her EEOICPA claim, reconstructing her radiation

12  dose), Ms. Harger requests the Court to enforce requests allegedly made by her

13  under the Freedom of Information Act (FOIA) to both DOL and NIOSH.

14      **a.    Due Process Claims**

15      Defendants assert Plaintiff Harger's due process claims against DOL and

16  NIOSH should be dismissed because there is no "final agency action" on her

17  claim, thus leaving no basis for review under the Administrative Procedure Act

18  (APA).  They submit the Director's Order vacating the final decision has rendered

19  moot Ms. Harger's request that the Court set aside that decision, and, to the extent

20  the Court may have jurisdiction to consider Ms. Harger's due process challenge

21  independent of the APA, such a challenge is not ripe in the absence of a

22  formalized administrative decision by DOL.  Additionally, Defendants argue the

23  Court lacks subject matter jurisdiction to review NIOSH's dose reconstruction

24  _____

25      [6]  The Director's Order also requires a new recommended decision with the

26  same administrative review rights afforded by the original decision.

27      [7]  Defense counsel also stated he was not sure whether Plaintiff Judy

28  Hengen's final order would also be reopened.

**ORDER GRANTING MOTIONS FOR JOINDER, DENYING IN PART,
GRANTING IN PART DEFENDANTS' MOTION TO DISMISS \* 6**

1  because the dose reconstruction also is not a final agency action, nor is it ripe for

2  decision because NIOSH is currently re-calculating Ms. Harger's dose

3  reconstruction.  As an alternative to dismissal, Defendants ask the Court to hold

4  this matter in abeyance pending the completion of a new dose reconstruction and

5  the issuance of a new final decision on Ms. Harger's entitlement to EEOICPA

6  benefits.

7        Plaintiffs' counsel is rightfully concerned about any delay in this case,

8  particularly considering the advanced age of several Plaintiffs.  However, the

9  Court is unwilling and unable to consider a decision that is not "final."  The

10  regulations associated with the EEOICPA permit the Director "[a]t any time after

11  the FAB has issued a final decision" to vacate, reopen, and remand that decision to

12  the FAB "without regard to whether new evidence or information is presented or

13  obtained[.]"  20 C.F.R. § 30.320(a).  This decision "is solely within the discretion

14  of the Director for Energy Employees Occupational Illness Compensation and is

15  not reviewable."  20 C.F.R. § 30.320(c).  The resulting new decision "will be

16  subject to the adjudicatory process" described in the regulations.  *Id*.  Therefore,

17  the Director acted well within his discretion in remanding the decision denying

18  Ms. Harger EEOICPA benefits.  In spite of the decision to reopen Ms. Harger's

19  and others' "final decisions," they will once again become  "final" at the latest one

20  year after the Director's decision.[8]

21        The Court shall permit the process at the NIOSH and DOL to come to its

22  

23      [8] "Any recommended decision . . . that is pending . . . for more than one year

24  from . . . the date the Director reopened the claim for issuance of a new final

25  decision pursuant to § 30.320(a), shall be considered a final decision of the FAB

26  on the one-year anniversary of such date."  20 C.F.R. § 30.316(c).  Therefore, Ms.

27  Harger's EEOICPA claim will once again become final one year from the

28  Director's decision on November 9, 2006.

**ORDER GRANTING MOTIONS FOR JOINDER, DENYING IN PART,
GRANTING IN PART DEFENDANTS' MOTION TO DISMISS** * 7

1  logical conclusion before stepping in with its own analysis of the agencies'

2  procedures.  The claims of all Plaintiffs whose claims are reopened by the Director

3  for reconsideration are therefore stayed.  Nevertheless, considering defense

4  counsel's representation concerning Ms. Alston, discovery may proceed regarding

5  her claim.  This should allay any concerns about undue delay on the part of all

6  parties because the additional Plaintiffs were joined in this case due to common

7  questions of law, and the discovery related to Ms. Alston's claims applies equally

8  to the claims of the remaining Plaintiffs.  The remaining Plaintiffs, and all

9  Plaintiffs who subsequently may be joined into this case and who are represented

10  by Mr. Foulds, shall be bound by this discovery.  Accordingly, Defendants'

11  Motion to Dismiss is denied, but the claims of Ms. Harger and other Plaintiffs

12  whose final decisions have been reopened in the Director's discretion are stayed

13  until the earlier of DOL's completion of reconsideration and another denial of

14  coverage, or a year from the Director's decision to reopen the decision.

### b.    FOIA Claims

16      Defendants state that Ms. Harger has not identified any specific FOIA

17  requests properly made by her that have not been answered.  Therefore, they ask

18  the Court to dismiss her request for enforcement under FOIA pursuant to Federal

19  Rules of Civil Procedure 8(a) and 41(b).  Additionally, Defendants have located

20  two requests to their agencies from Plaintiff's counsel, but they assert and provide

21  documentation that shows those requests either have been answered or were not

22  properly made on behalf of Ms. Harger or anyone other than Mr. Foulds.  At the

23  hearing, Mr. Foulds stated he would attempt to gather the documents requested

24  through the discovery process.  Therefore, Plaintiffs' FOIA claims are dismissed at

25  this time.

### c.    12(b)(6) Motion to Dismiss NIOSH as Defendant

27      Defendants lastly make an argument under Rule 12(b)(6) that the Court

28  should dismiss NIOSH as a Defendant because DOL is responsible for claims

**ORDER GRANTING MOTIONS FOR JOINDER, DENYING IN PART,
GRANTING IN PART DEFENDANTS' MOTION TO DISMISS * 8**

adjudication under the EEOICPA.  The respective roles of DOL and NIOSH, a branch of the Department of Health and Human Services, in dose reconstruction and determination of eligibility for benefits under the EEOICPA is not absolutely clear to the Court at this time.  Therefore, it deems dismissal of NIOSH premature and denies the Government's motion to dismiss it as a Defendant.

Accordingly, **IT IS HEREBY ORDERED:**

1.  Plaintiffs' Motions for Joinder (Ct. Rec. 39 & 44) are **GRANTED**.

2.  Defendants' Motion to Dismiss (Ct. Rec. 21) is **DENIED in part, GRANTED in part**.

3.  The claims of Plaintiff Opal Harger and other Plaintiffs whose final decisions denying them EEOICPA benefits have been administratively reopened by the Director are **stayed** pending further notice from the parties.

**IT IS SO ORDERED.**  The District Court Executive is directed to enter this Order and to provide copies to counsel.

**DATED** the 14th day of May, 2007.

*s/ Robert H. Whaley*

ROBERT H. WHALEY
Chief United States District Judge

Q:\CIVIL\2006\Harger\dismiss.ord.wpd

**ORDER GRANTING MOTIONS FOR JOINDER, DENYING IN PART, GRANTING IN PART DEFENDANTS' MOTION TO DISMISS * 9**